IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| LARRY DEWAYNE ADAMS,<br><br>                    Petitioner,<br><br>    vs.<br><br>MARTIN FRINK, and ATTORNEY<br>GENERAL OF THE STATE OF<br>MONTANA,<br><br>                    Respondents. | CV 13-178-M-JCL<br><br><br>ORDER |

This matter is before the Court on Petitioner Larry Adams' petition for

habeas corpus relief filed under 28 U.S.C. § 2254. As directed, the parties filed

briefs in support of their respective positions on all issues in this case, and the case

is now ripe for final disposition. For the reasons discussed, the Court deems it

appropriate to dismiss the petition as barred by the applicable statute of

limitations.

**I.      Background**

On September 14, 1998, Adams was involved in a physical altercation with

his girlfriend in Ravalli County, Montana which led to criminal charges being

filed against him in the Montana Twenty-First Judicial District Court, Ravalli

County. On September 8, 1999, the Ravalli County Attorney filed an Amended

1

Information charging Adams with several crimes, including attempted deliberate homicide, criminal possession of dangerous drugs ("102 g of marijuana" (doc. 11-3 at 3)), and criminal possession of drug paraphernalia.

Following a jury trial in September 1999, Adams was convicted of, among other things, aggravated assault (a lesser-included offense of attempted deliberate homicide), and criminal possession of dangerous drugs (a felony). On February 17, 2000, the Montana Twenty-First Judicial District Court entered an Amended Judgment and Commitment sentencing Adams to a total of 36 years in prison on all the convictions. Adams' sentence included a 10-year enhancement for aggravated assault based on Adams' use of a weapon in the commission of the offense.

For the next 10 years Adams pursued remedies for post conviction relief, and federal habeas relief with respect to his February 2000 judgment and sentence. On November 23, 2009, this United States District Court concluded that the 10-year sentencing enhancement for the use of a weapon was unconstitutionally imposed against Adams in violation of the holding in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and granted Adams habeas relief on that issue. *Adams v. Mahoney*, CV 07-103-M-JCL (Nov. 23, 2009).

Following the referenced habeas relief Adams was re-sentenced in state

court without the 10-year enhancement.  Thus, on February 17, 2010, the Montana Twenty-First Judicial District Court filed a Second Amended Judgment and Commitment sentencing Adams to a total of 25 years in prison on all of his convictions.  (Doc. 11-16 at 7.)  Adams did not file a direct appeal of this 2010 judgment.

On August 22, 2013, Adams filed the present petition for habeas corpus relief.  Adams advances two grounds for relief:  (1) Adams was deprived of his right to effective assistance of counsel as required under the Sixth Amendment to the United States Constitution because his counsel refused to file a direct appeal of the Second Amended Judgment and Commitment filed February 17, 2010; and (2) Adams' conviction for felony criminal possession of dangerous drugs was obtained in violation of his due process rights protected under the Fourteenth Amendment to the United States Constitution because the evidence presented at his 1999 trial established he possessed only 42 grams of marijuana.  Therefore, he argues the evidence did not establish, beyond a reasonable doubt, that he possessed a quantity of marijuana in excess of 60 grams as was required to support a conviction for felony possession of a dangerous drug.  The Court will refer to this claim as Adams' "Sufficiency of the Evidence Claim."

Respondents Martin Frink and the Attorney General of the State of Montana

argue, in part, that Adams' petition is barred by the applicable one-year statute of limitations. 28 U.S.C. § 2244(d). Specifically, Respondents argue Adams' August 22, 2013 petition was filed more than one year after his February 17, 2010 convictions became final. For the reasons stated, the Court agrees.

## II. Discussion

A one-year statute of limitations period applies to habeas petitions filed under 28 U.S.C. § 2254. The limitations period commences to run as follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action[.]

28 U.S.C. § 2244(d)(1).

### A. Limitations Period

The one-year limitations period applicable to Adams' petition commenced when his conviction became final upon the expiration of the time permitted for a

direct appeal of his criminal judgment, i.e. April 19, 2010.[1]  Mont. R. App. P.

4(5)(b)(I); *Gonzales v. Thaler*, ___ U.S. ___, 132 S. Ct. 641, 653-54 (2012).  Thus,

the statutory limitations period expired one year later, and under this initial

calculation, the last day on which Adams could have filed his federal habeas

petition was April 19, 2011.  Instead, Adams filed his present petition on August

22, 2013, over two years later.

Adams advances several arguments which, if meritorious, would operate to

either delay the date on which the limitations period commenced, or toll portions

of the limitations period after it began to run.  Adams asserts he was unable to

obtain a copy of the transcript of his 1999 criminal trial until March 15, 2011.  All

of Adams' arguments for extending the deadline of the one-year limitations period

stem from his asserted inability to obtain his trial transcript.  The Court will first

address whether the alleged absence of the transcript delayed the commencement

of the limitations period.

## B.    <u>Impediment</u>

In most cases, the finality of a petitioner's conviction triggers the

commencement of the one-year period of limitations under 28 U.S.C. §

---

[1]Sixty days after February 17, 2010, was April 18, 2010, which was a
Sunday.  Therefore, the last day Adams could have filed a notice of direct appeal
to the Montana Supreme Court was Monday, April 19, 2010.

2244(d)(1)(A).  *See Thibodeaux v. Diaz*, 2014 WL 1512226, *2 (C.D. Cal. 2014).

Only in "rare instances" do circumstances exist which trigger the alternative

commencement dates identified in section 2244(d)(1)(B) - (D).  *Id*.

Adams seeks to invoke the provisions of 28 U.S.C. § 2244(d)(1)(B)

asserting that the statute of limitations did not commence until after an

"impediment to filing an application [for habeas relief] created by State action in

violation of the Constitution or laws of the United States is removed[.]"  Adams

asserts that following his February 17, 2010 convictions he began diligently and

continuously writing to his defense attorney, the state district court, the state

district court clerk, the Ravalli County Attorney, the Montana Supreme Court, and

this federal court requesting they provide him with a copy of his trial transcript,

but they each failed or refused to do so.  (Doc. 35 at 10.)  Therefore, Adams argues

the failure of the various individuals and entities to produce his trial transcript

qualifies as an "impediment" under section 2244(d)(1)(B) which delayed the

commencement of the limitations period.  The Court disagrees.

Adams states he finally received a copy of his transcript via a written

communication dated March 15, 2011, from the attorney who represented him in

his federal habeas case.  (Doc. 34-2 at 9 of 24.)  Adams asserts that it was only

after reviewing the transcript that he realized he had a plausible Sufficiency of the

Evidence Claim. Thus, he argues the alleged "impediment" was removed approximately March 15, 2011, which then commenced the limitations period under section 2244(d)(1)(B).

Section 2244(d)(1)(B) sets a "high[] bar" for circumstances that qualify as an impediment which delays the commencement of the limitations period. *Ramirez v. Yates*, 571 F.3d 993, 1000 (9th Cir. 2009). Qualifying circumstances are only those that "altogether prevent[ a petitioner] from presenting his claims in *any* form, to *any* court." *Id.* at 1001 (emphasis in original). And a petitioner bears the burden of demonstrating that an alleged impediment actually prevented him from timely filing a habeas petition – he must establish a causal connection between the impediment and his failure to timely file a petition. *See Bryant v. Arizona Attorney General*, 499 F.3d 1056, 1060 (9th Cir. 2007), *Thibodeaux*, 2014 WL 1512226 at *3, and *Rhodes v. Adams*, 2009 WL 688842, *5 (N.D. Cal. 2009). For the reasons discussed, the Court concludes that Adams' inability to obtain a copy of his trial transcript does not constitute an impediment under section 2244(d)(1)(B).

As a preliminary matter, a fundamental defect in Adams' argument is that he had no enforceable right to have his trial transcript produced to him. The United States Supreme Court has considered whether limitations imposed on a convicted

person's ability to obtain a trial transcript violate either the due process clause of the Fifth Amendment to the United States Constitution, or the equal protection rights in the Fifth and Fourteenth Amendments. *United States v. MacCollom*, 426 U.S. 317 (1976). Reversing a decision of the Ninth Circuit which had held prisoners have an absolute right to a transcript, the Court in *MacCollom* reasoned:

> "The usual grounds for successful collateral attacks upon convictions arise out of [...] events in the courtroom of which the defendant was aware and can recall without the need of having his memory refreshed by reading a transcript. He may well have a need of a transcript (to support his claim) but rarely, if ever, ... to become aware of the events or occurrences which constitute a ground for collateral attack."

*MacCollom*, 426 U.S. at 328 (quoting *United States v. Shoaf*, 341 F.2d 832, 835 (4th Cir. 1964)).

Based on *MacCollom*, federal habeas courts have concluded that the lack of a trial transcript, by itself, does not constitute an impediment under 28 U.S.C. § 2244(d)(1)(B) since a prisoner does not have an absolute right to obtain a transcript for purposes of pursuing collateral review of a conviction. *Thibodeaux*, 2014 WL 1512226 at *3; *Hodge v. Swarthout*, 2013 WL 4789737, *5 n.11 (C.D. Cal. 2013). Thus, standing alone, Adams' purported inability to obtain the trial transcript does not constitute an "impediment."

Moreover, Adams has not established that his purported inability to obtain his trial transcript was caused by unconstitutional or unlawful State action. The

asserted failures of the various state actors and state courts to produce the trial transcript as he alleges do not constitute unlawful or unconstitutional State action since he had no right to obtain a copy of a trial transcript in the first instance. *Hodge*, 2013 WL 4789737 at *5 and n.11 (citing *MacCollom*, 426 U.S. at 324-27).

Additionally, Adams' purported inability to obtain a copy of the trial transcript cannot be attributed to the State. In this regard, it is undisputed that the attorney who represented Adams in 2003 with respect to a petition for post-conviction relief filed in state court possessed a copy of Adams' trial transcript at that time. (Doc. 11-12 at 9, and 15 (attorney referring to "my [trial] transcript I have").) Where a petitioner's prior counsel had possession of a trial transcript, "[a]ny failure by counsel to provide the transcript[] to Petitioner at the conclusion of direct review *or thereafter* cannot be imputed or attributed to the state." *Hodge*, 2013 WL 4789737 at *4 (emphasis added) (citing cases including *Lawrence v. Florida*, 549 U.S. 327, 337 (2007)).

Further, the record in this case demonstrates Adams' lack of access to his trial transcript did not impede his ability to file earlier challenges to his convictions. Adams pursued numerous collateral challenges in 2000, 2003, 2007, 2010 and 2011 – all purportedly without access to his trial transcript. Thus, Adams' filings demonstrate that the absence of his transcript "had no bearing" on

his ability to pursue habeas or post-conviction relief, albeit requests for relief which may have raised different claims. *Hodge*, 2013 WL 4789737 at *5 (citing cases). The lack of a transcript did not prevent him from filing his claims in "any form, to any court."

Finally, Adams does not dispute that he personally attended his entire criminal trial in 1999. Where a petitioner has attended his own trial it is illogical for a petitioner to claim "he could not assert [a claim challenging the] sufficiency of the evidence without his trial transcripts." *Mora v. McEwen*, 2013 WL 1870747, *3 (C.D. Cal. 2013), adopted by *Mora v. McEwen*, 2013 WL 1870745, *1 (C.D. Cal. 2013). Having attended his own trial, Adams' inability to obtain his trial transcript could not have prevented him from previously or timely asserting his Sufficiency of the Evidence Claim.

Based on the foregoing, the Court finds Adams has not met his burden of demonstrating that his inability to obtain a copy of his transcript at any time during the 11½-year period from his 1999 trial until March 15, 2011, constituted an impediment caused by unlawful State action which prevented him from filing the instant federal habeas petition until August 22, 2013. Significantly, Adams does not explain why, even after he obtained his transcript on March 15, 2011, he still did not file his Sufficiency of the Evidence Claim in federal court until August 22,

2013.  Thus, Adams has not established that his lack of his trial transcript was the cause of his untimely habeas petition.  Consequently, Adams' delay in obtaining his trial transcript does not qualify as an "impediment" under section 2244(d)(1)(B), and the circumstances did not delay the commencement of his limitations period.

## C.    <u>Statutory Tolling</u>

The tolling provision of the federal habeas statutes states:

> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

The limitations period applicable to Adams' habeas petition commenced on April 20, 2010, the day after his conviction became final.  But Adams argues the post-conviction and collateral review proceedings he prosecuted in the courts of the State of Montana tolled his limitations period under section 2244(d)(2).

On July 8, 2010, Adams filed a petition for writ of habeas corpus with the Montana Supreme Court.  *See Adams v. Mahoney*, No. 10-0338, *available at* https://supremecourtdocket.mt.gov (accessed January 25, 2016).  By Order entered August 31, 2010, the Montana Supreme Court addressed the merits of Adams' claims, and denied the petition concluding that (1) the claims did not demonstrate

his new sentence is facially illegal, and (2) Adams is lawfully incarcerated. *See Adams v. Mahoney*, No. 10-0338 (Mont. August 31, 2010), *available at* https://supremecourtdocket.mt.gov (accessed January 25, 2016).

Based on Adams' state habeas corpus petition, 80 of the 365 days of the limitations period elapsed from April 20, 2010, through July 8, 2010, inclusive, leaving 285 days remaining in the limitations period. As of July 8, 2010, the pendency of Adams' "properly filed" state habeas petition tolled the period of limitations until the Montana Supreme Court's decision on August 31, 2010.[2] The limitations period then resumed on September 1, 2010.

On April 21, 2011, Adams filed a petition for post-conviction relief in the Montana Twenty-First Judicial District Court, Ravalli County.[3] By order filed

---

[2]Adams refers to another earlier federal habeas corpus petition that he filed on October 5, 2010, that was dismissed on December 3, 2010, suggesting that petition may have tolled his limitations period. *See Adams v. Mahoney*, CV 10-113-M-DWM (D. Mont. 2010). But a federal habeas petition does not toll the one-year limitations period under 28 U.S.C. § 2244(d)(2). *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001).

[3]Adams' counsel asserts in briefing that Adams' initially attempted to file this same petition with the Montana Supreme Court on April 8, 2011, but the petition was rejected and returned to him. (Doc. 32 at 17.) District Judge Jeffrey H. Langton referred to Adams' April 8, 2011 filing with the Montana Supreme Court in his Order dismissing Adams' post-conviction petition. (Doc. 11-17 at 14-15.) But Judge Langton noted the petition was returned to Adams because it was not proper to file it with the Montana Supreme Court since it instead needed to be filed with the district court. (*Id.*) Therefore, the Court concludes Adams' April 8, 2011 filing was not a "properly filed" petition sufficient to toll the statute of

April 17, 2012, the district court dismissed the petition. (Doc. 11-17.) Adams

appealed the dismissal, and on February 5, 2013, the Montana Supreme Court

issued its memorandum opinion affirming the dismissal of the petition.[4] (Doc. 11-

21.) The remittitur in that appeal was issued February 21, 2013. *See Adams v.*

*State of Montana*, No. 12-0271 (Mont. February 21, 2013), *available at*

---

limitations under 28 U.S.C. § 2244(d)(2).

[4]Although not argued by the parties, the Court has considered whether this petition was "properly filed", and concludes it was. The district court dismissed the petition as untimely because Adams filed it beyond the one-year statute of limitations applicable to petitions for post-conviction relief under Mont. Code Ann. § 46-21-102(1)(a). (Doc. 11-17 at 15-16.) On appeal, the Montana Supreme Court affirmed the dismissal on the basis that the petition was untimely filed. (Doc. 11-21 at 3.) Ordinarily, if a state petition for post-conviction relief is dismissed as untimely filed under applicable state law, the petition is deemed not "properly filed" and, therefore, the pendency of the petition does not toll the habeas statute of limitations under 28 U.S.C. § 2244(d)(2). *Allen v. Siebert*, 552 U.S. 3, 7 (2007). But the prison mailbox rule – a rule that deems a document "filed" when a prisoner delivers the document to the prison authorities for mailing – applies to a prisoner's collateral review filings made in both federal court and state court (*Huizar v. Carey*, 273 F.3d 1220, 1223 (9th Cir. 2001)), unless the state courts have squarely rejected the prison mailbox rule. *Orpiada v. McDaniel*, 750 F.3d 1086, 1088 n.1 (9th Cir. 2014). The parties have not addressed the issue of whether the Montana Supreme Court has expressly rejected the prison mailbox rule, and the Court has not found any decisional law authority in Montana which rejects the mailbox rule. Therefore, because Adams filed his petition for post-conviction relief on April 21, 2011, the Court will assume, without deciding, that he must have submitted the petition to prison authorities for mailing on or before April 19, 2011, which was the last day of the one-year limitations period applicable to his state petition. Therefore, applying the mailbox rule, the Court will treat Adams' April 21, 2011 petition as "properly filed" under 28 U.S.C. § 2244(d)(2), and will deem the pendency of that petition to have tolled the statute of limitations even though the state courts dismissed the petition as untimely filed.

13

https://supremecourtdocket.mt.gov (accessed January 25, 2016).

Based on Adams' state post-conviction petition, the Court finds the federal statute of limitations ran from September 1, 2010, until April 21, 2011, when he filed that petition – a total of 233 days, inclusive. Thus, 233 of the then-remaining 285 days in the limitations period elapsed, leaving only 52 days remaining. Adams' petition for post-conviction relief tolled the limitations period through February 21, 2013, and the statute of limitations again resumed on February 22, 2013.[5]

After the limitations period resumed on February 22, 2013, the remaining 52 days in the 365-day limitations period expired April 15, 2013, because Adams commenced no other state post-conviction or collateral review proceeding prior to April 15, 2013.[6] Therefore, the last day Adams could have filed his federal habeas petition, taking into account the tolling under 28 U.S.C. § 2244(d)(2), was April 15, 2013. Based on the foregoing analysis, Adams' federal habeas petition was untimely filed on August 22, 2013. The Court must next consider, however, whether Adams' limitations period is subject to equitable tolling.

---

[5] *See Orpiada v. McDaniel*, 750 F.3d 1086, 1088 n.1 (9th Cir. 2014) (tolling limitations period through the date the state supreme court's remittitur issued).

[6] The 52 days actually expired on April 14, 2013, which was a Sunday.

**D.     Equitable Tolling**

Adams argues the circumstances of his case involving his inability to obtain a copy of the trial transcript entitle him to equitable tolling of the limitations period.  For the reasons discussed, the Court disagrees.

The limitations period applicable to federal habeas petitions set forth in 28 U.S.C. § 2244(d)(1) is subject to equitable tolling.  *Holland v. Florida*, 560 U.S. 631, 645 (2010).  "A 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  A petitioner bears the burden of establishing these two elements occurred in his case.  *Pace*, 560 U.S. at 418.  Whether equitable tolling is applicable requires a "fact-specific inquiry", but "may be guided by 'decisions made in other similar cases.'"  *Doe v. Busby*, 661 F.3d 1001, 1012 (9th Cir. 2011).

The decisional law emphasizes that the standard for triggering equitable tolling "is very high, lest the exceptions swallow the rule[,]" and the occurrence of circumstances which warrant equitable tolling is very rare.  *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (citation and quotation omitted).  The Ninth Circuit applies the doctrine sparingly as the elements of the doctrine are

15

satisfied only "[w]hen external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim[.]" *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999). *Waldron-Ramsey*, 556 F.3d at 1011 (similarly describing the "rarity" of the doctrine). A petitioner must establish that, notwithstanding the petitioner's reasonable diligence, the extraordinary circumstances proximately caused the petitioner's late filing. *Stillman v. LaMarque*, 319 F.3d 1199, 1203 (9th Cir. 2003). The purpose of the reasonable diligence requirement "is to verify that it was the extraordinary circumstance, as opposed to some act of the petitioner's own doing, which caused the failure to timely file." *Doe v. Busby*, 661 F.3d 1001, 1012-13 (9th Cir. 2011).

Adams relies upon *Lott v. Mueller*, 304 F.3d 918 (9th Cir. 2002) to suggest that equitable tolling should apply to his limitations period. In *Lott*, the inmate had been transferred to a different prison facility for a period of time, thereby separating him from all of his legal files and materials for that period of time. The Ninth Circuit remanded the case, to allow the district court to assess whether the inmate's separation from his legal files actually made it impossible for him to timely file his habeas petition. *Lott*, 304 F.3d at 924-25. Thus, even under *Lott*, and consistent with the doctrine of equitable tolling, the inmate bears the burden of showing he exercised reasonable diligence, and that his "lack of access to his

materials was an extraordinary circumstance that caused him to file his petition late." *Thibodeaux v. Diaz*, 2014 WL 1512226, *5 (C.D. Cal. 2014) (analyzing the decision in *Lott*). For example, a petitioner's lack of access to legal materials might not be the cause of an untimely filing either where a petitioner knew of the factual basis for the habeas claim, where a petitioner fails to identify "specific instances where he needed a particular document", or where, through a petitioner's own diligence, he could have either retained or obtained possession of a particular document. *Thibodeaux*, 2014 WL 1512226, at *5 (citations omitted).

Specific to the issue of a petitioner's access to a trial transcript, again it is significant to note that a petitioner does not have a right to be provided a copy of the transcript of his trial. *United States v. MacCollom*, 426 U.S. 317, 319, 328 (1976). Therefore, standing alone, the mere absence of a trial transcript does not rise to the level of an extraordinary circumstance that prevents a petitioner from filing a habeas claim to invoke equitable tolling. *Arriaga v. Gonzales*, 2014 WL 5661023, *11 (C.D. Cal. 2014) (citing *Hall v. Warden*, 662 F.3d 745, 750-51 (6th Cir. 2011)). "[T]he United States Courts of Appeals have uniformly rejected equitable tolling arguments premised on a petitioner's lack of transcripts." *Sousa v. Yates*, 2010 WL 369299, *1 (C.D. Cal. 2010) (citing cases). And possession of a transcript is not a condition precedent to filing a habeas petition as a federal

habeas court can order production of a transcript if necessary. *Thibodeaux*, 2014

WL 1512226 at *7 n.4 (citing *Gassler v. Bruton*, 255 F.3d 492, 495 (8th Cir.

2001)). Thus, a petitioner "must establish that the lack of transcripts prevented

him from timely filing the instant Petition, notwithstanding the exercise of

reasonable diligence." *Hodge v. Swarthout*, 2013 WL 4789737, *7 (C.D. Cal.

2013).

Significantly, here Adams obtained a copy of his 1999 trial transcript

around March 15, 2011, more than two years before his one-year limitations

period expired on April 15, 2013. Where a petitioner still has time within which

to file a habeas petition after he obtains a copy of his trial transcript, then the

absence of the transcript "could not have delayed the Petition beyond the [federal

statute of limitations] deadline." *Arriaga*, 2014 WL 5661023 at *11.

Also, as noted, Adams mounted several collateral challenges to the validity

of his convictions over the years in 2000, 2003, 2007, 2010 and 2011 – all without

access to his trial transcript. Clearly, the absence of his transcript did not prevent

him from filing those prior challenges, and it cannot qualify as an extraordinary

circumstance here. *See Arriaga*, 2014 WL 5661023 at *11.

Under the circumstances of this case, Adams has not met his burden of

establishing that he acted with sufficient diligence in attempting to obtain his

transcript since 1999, or that his inability to obtain his transcript constitutes an extraordinary circumstance that actually caused the untimely filing of this federal petition.  In view of Adams' attendance at his trial proceedings and his resulting constructive awareness of the predicate facts of his Sufficiency of the Evidence Claim, he has failed to explain why possession of his transcript was necessary to enable him to prepare his instant petition.  *See Hodge*, 2013 WL 4789737 *7 (citing *Leyva v. Yates*, 2010 WL 2384933, *5 (C.D. Cal. 2010)).  Absent a sufficient showing that possession of the transcript was necessary, Adams' is not entitled to equitable tolling.  *Thibodeaux*, 2014 WL 1512226 at *7.

### E.    Exceptions to Limitations Period - Actual Innocence

The expiration of the federal habeas statute of limitations in 28 U.S.C. § 2244(d)(1), thereby baring a petitioner's claims in federal court, can be overcome by a proper showing of actual innocence.  *McQuiggin v. Perkins*, ___ U.S. ___, 133 S. Ct. 1924, 1928 (2013).  To persuade a federal court of sufficient actual innocence a petitioner must demonstrate that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *McQuiggin*, 133 S. Ct. at 1928 (quotations and citations omitted).

A legitimate demonstration of actual innocence qualifies as an exception to the habeas limitations period.  *McQuiggin*, 133 S. Ct. at 1931.  The exception,

however, has a narrow scope and applies only in the extraordinary and rare case. *Calderon v. Thompson*, 523 U.S. 538, 559 (1998). And a petitioner bears the burden of demonstrating his actual innocence to invoke the exception. *See Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014).

A viable claim of actual innocence must be based on "new reliable evidence [...] that was not presented at trial." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Also, the assertion of actual innocence of a criminal offense must be viewed "in light of all the evidence[.]" *Bousley v. United States*, 523 U.S. 614, 623 (1998). All admissible evidence of petitioner's guilt or innocence is relevant to the inquiry. *Id*. at 624. The court must consider evidence that is "old and new, incriminating and exculpatory, and admissible at trial or not." *Lee*, 653 F.3d at 938 (citation omitted).

> The habeas court must make its determination concerning the petitioner's innocence "in light of all the evidence, including that alleged to have been illegally admitted (but with due regard to any unreliability of it) and evidence tenably claimed to have been wrongly excluded or to have become available only after the trial."

*Schlup,* 513 U.S. at 328 (citation omitted).

Finally, "'actual innocence' means factual innocence, not mere legal insufficiency[,]" (*Bousley*, 523 U.S. at 623 (citation omitted)), and not "just legal

insufficiency of the evidence." *United States v. Ratigan*, 351 F.3d 957, 965 (9th Cir. 2003).

With the record complete, the court must then "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. The court must assess whether "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Bousley*, 523 U.S. at 623.

Adams contends he is actually innocent of the offense of felony possession of dangerous drugs. The parties agree that under applicable Montana law existing in 1998, felony possession required possession of 60 grams or more of a dangerous drug. Mont. Code Ann. § 45-9-102(2) and (5) (1997). (Doc. 11-1). James Chinn, a former Ravalli County Sheriff's Detective, testified at Adams' 1999 criminal trial, and the parties agree that his trial testimony identified two bags of marijuanna that were in Adams' possession – one that weighed 6 grams and one that weighed 36 grams. (Doc. 11 at 21 of 33; Doc. 33-3 at 35 of 38; Doc. 11-6 at 27 of 146.)

Adams further relies upon Detective Chinn's more recent deposition testimony provided on January 28, 2015. Although Detective Chinn believed there were four bags of marijuana seized from Adams' residence (doc. 34-1 at 7 of

62), Adams asserts there is no other evidence corroborating Chinn's asserted memory of four bags. Additionally, Chinn confirmed his handwritten notes from his investigation in 1998 do not identify an amount of marijuana in excess of 60 grams. (Doc. 34 at 8 of 62.) Therefore, Adams argues the evidence presented to the jury established he possessed only 42 grams of marijuana – an amount insufficient to constitute felony possession – and his actual innocence renders the habeas statute of limitations inapplicable. But for the reasons discussed, the Court concludes the circumstances advanced by Adams do not qualify as "actual innocence."

The totality of the evidence now before the Court precludes the necessary finding that no reasonable juror would have convicted Adams of felony possession. John Jeffries, a former Ravalli County Sheriff's Deputy, testified at Adams' 1999 trial. He sated he found a lock box in Adams' residence which contained two bags of marijuana. (Doc. 11-5 at 57 of 141.) Detective Chinn's trial testimony stated the officers found the lock box "in a center bedroom, what appeared to be a second bedroom/storage room area." (Doc. 11-6 at 26 of 146.) And in his 2015 deposition, Detective Chinn testified that two additional bags of marijuana were found in the master bedroom at Adams' residence, and he weighed all four bags. (Doc. 34-1 at 7 of 62.) After weighing the marijuana, Detective

Chinn prepared an "Internal-Memo" for the Ravalli County Attorney in which he reported marijuana found in Adams' possession "with a total weight of approximately 102 grs.[.]"  (Doc. 34-1 at 7 and 62 of 62.)

Based on all the evidence now before the Court, the Court cannot conclude that no reasonable juror would have convicted him of felony possession.  Adams' assertion – that the evidence presented at his trial established that he only possessed 42 grams of marijuana – is nothing more than an argument challenging the sufficiency of the evidence.  The mere legal insufficiency of the evidence presented at trial does not constitute actual innocence.  *Bousley*, 523 U.S. at 623; *Ratigan*, 351 F.3d at 965.  Adams' arguments do not demonstrate his actual innocence and, therefore, he has not overcome the bar imposed by the one-year limitations period in 28 U.S.C. § 2244(d)(1).

### F.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant."  Rule 11(a), Rules Governing Section 2254 Cases in the United States District Courts.  A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's

resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

For the reasons discussed, even after applying a significant period of statutory tolling to the one-year limitations period applicable to Adams' petition, the Court concludes Adams' petition was untimely filed. Adams' arguments in support of an impediment, further equitable tolling, and actual innocence do not meet the applicable legal standards, and lack merit. Thus, the Court finds the issues presented in this case are not adequate to deserve encouragement to proceed further, and denies the issuance of a COA.

## III. Conclusion

Based on the foregoing, IT IS ORDERED that Adams' petition is DISMISSED with prejudice as barred by the one-year limitations period set forth in 28 U.S.C. § 2244(d)(1).

The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Adams dismissing his petition.

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.

DATED this 2nd day of February, 2016.

Jeremiah C. Lynch
United States Magistrate Judge